SOVEREIGN CAMP, W. O. W., v. BANKS.

(Division B. Nov. 9, 1936. Suggestion of Error Overruled Nov. 23, 1936.)

[170 So. 634. No. 32384.]

280

**Shannon & Schauber,** of Laurel, and **Rainey T. Wells,** of Omaha, Neb., for appellant.

**J. P. & A. K. Edwards,** of Mendenhall, for appellee.

Argued orally by **A. B. Schauber,** for appellant, and by **J. P. Edwards,** for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee, while being initiated into membership of appellant's local camp at Pinola in Simpson county, in this state, was struck on the right buttock by a spanker in the hands of Magee, a member of the camp, and was seriously injured. The impact made a hole in his flesh from one and one-half to two inches deep; he bled profusely, was taken to a hospital in Magee where he remained for a while, and was treated by Dr. Diamond, who was in charge of the hospital, for some time. He sued appellant, the Sovereign Camp, for damages for the wrongful injury alleged to have been caused by the unlawful conduct of its agents in performing the initiation ritual. He recovered judgment in the sum of two thousand dollars, from which judgment the appellant prosecutes this appeal.

Appellant is a corporation with its home office at Omaha, Neb. It is licensed to do business in this state. Its principal business is commercial—the issuance to its members of benefit certificates, a form of life insurance. It has local camps all over the country, including this

state, one of which is located at Pinola, where appellee received his injury.

Appellee's case is that appellant is responsible for the injury because it was inflicted by its agents in the pursuance of their duties, notwithstanding they might have gone a step beyond their authority. Appellant's defense is that the use of the spanker was no part of its prescribed ritual, and that therefore those using it were acting entirely without the scope of their authority.

Appellant had inaugurated in South Mississippi a campaign for the establishment of new camps, additional membership, and an increase in the volume of insurance resulting therefrom. Appellant's president, by authority of its constitution and by-laws, had appointed W. A. Martin and P. D. Fisher to take charge of the campaign in that section of the state. Appellee was solicited by Martin to become a member of the camp at Pinola and take a benefit certificate. He accepted the proposition. In order to get the insurance it was necessary that he become a member of the camp and go through the initiation proceedings. The time was set for that, and the place was where the camp regularly met. Appellee and from twelve to fifteen others were initiated into membership. The spanker was used on several of them, including appellee. Martin and Fisher were present and took part in the ritualistic ceremonies. The spanker had been used in their presence on other occasions. Such ceremonies appear to be a type of hazing. The spanker was an instrument of this kind: It was about ten inches square, had a handle about three feet long, on one side it was metal with a cylinder attached to it encasing a blank cartridge; on the other side it was padded. The purpose was to strike with the padded side and the impact would explode the cartridge and frighten the subject.

Appellee was a football player, and testified that before his initiation he told Martin that he had been in-

jured in playing football, and he did not want to be struck with the spanker; that Martin replied that they would not be hard on him, or words to that effect. Appellee was put through the regular ritual prescribed by appellant, immediately after which and as a part of the ceremony Magee administered the spanker. At the time appellee was blindfolded and down on the floor on his all fours; Magee struck him with the wrong side of the spanker (the side with the cartridge in it); evidently the cartridge exploded and tore the hole in his buttock, although those who were present and who testified were not certain whether they heard the cartridge or not. Dr. Diamond testified that about ten days after the injury wadding sloughed out of the wound, and that it looked like wadding from a pistol cartridge.

The evidence for appellant showed without dispute that the use of the spanker was no part of the ritual. Appellant under its constitution and by-laws has direction and control over all of its local camps; it has "original and appellate jurisdiction in all matters pertaining to the general welfare of this association." The local camp and its members, as well as Martin and Fisher, in initiating appellee were acting within the scope of their authority. The question is whether or not appellant is responsible for an act which was a step beyond such authority. We are of opinion that under the evidence in this case that was a question for the jury, and we base that conclusion on the principles laid down in Loper v. Yazoo & M. V. R. Co., 166 Miss. 79, 145 So. 743, in which American Law Institute, Restatement, Agency, secs. 229 and 454, are approved, and Hand v. Life Ins. Co., 174 Miss. 822, 165 So. 616. The ultimate question is whether it is just that the injury resulting from the act of the servants should be considered one of the normal risks of the ceremony. Putting it differently, was Magee's unauthorized act one of the normal risks of the ceremony? Should appellant have reasonably antici-

pated it as a probable occurrence? If only one reasonable conclusion can be reached from the evidence in answering those questions, the court then settles it one way or the other by a directed verdict. On the other hand, if from the evidence those questions might be reasonably answered either in the affirmative or the negative, then it is a question for the jury. We think the present case comes within the latter class. Under the evidence in this case appellant was chargeable with notice that some, if not all, of its local camps were going beyond the prescribed ritual in taking in members. This is an additional reason why such acts should be considered a part of the normal risk of the business.

The case nearest in point is Supreme Lodge, Order of Moose, v. Kenny, 198 Ala. 332, 73 So. 519, L. R. A. 1917C, 469, a suit for an injury received by the plaintiff while being initiated into the lodge. The court held that a principal is responsible for the acts of his agent done within the scope of his employment and while in the line of his duties, although the agent seeks to accomplish his principal's business by improper and unlawful means either in a way not authorized or known to the principal, or contrary to his express directions. The authorities relied on by appellant are not in point; they do not support its contentions.

It follows from what has been said that the court committed no error in refusing the two instructions requested by appellant, by which it was sought to inform the jury that if the evidence showed appellee was injured as the result of going beyond the ritual, there was no liability.

Affirmed.